David. S. Casey, Jr., SBN 060768
*dcasey@cglaw.com*
Gayle M. Blatt, SBN 122048
*gmb@cglaw.com*
P. Camille Guerra, SBN 326546
*camille@cglaw.com*
**CASEY GERRY SCHENK**
**FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Tel: (619) 238-1811
Fax: (619) 544-9232

*Attorneys for Plaintiff and*
 *the Putative Classes*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD STALLONE, on behalf of himself and all other persons similarly situated,<br><br>        Plaintiff,<br>    v.<br><br>Farmers Insurance Company, Inc.,<br><br>        Defendant. | Case No. 2:21-cv-4841<br><br>**CLASS ACTION COMPLAINT**<br><br>**Demand for Jury Trial** |

Plaintiff Ronald Stallone, individually, and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to him and on information and belief as to all other matters, by and through undersigned counsel, hereby brings this Class Action Complaint against Defendant Farmers Insurance Company, Inc., and alleges as follows:

### <u>INTRODUCTION</u>

1.    Every year millions of Americans have their most valuable personal

1   information stolen and sold online because of unauthorized data disclosures. Despite

2   the dire warnings about the severe impact of unauthorized data disclosures on

3   Americans of all economic strata, companies still fail to put adequate security

4   measures in place to prevent the unauthorized disclosure of private data about their

5   customers or potential customers.

6       2.      Defendant Farmers Insurance Company, Inc. ("Defendant" or

7   "Farmers"), provides insurance products, including car insurance to Americans

8   across the country. In doing so, it collects *and provides* sensitive personal

9   information about members of the public when quoting prices for its car insurance

10  product. Defendant claims to "value your privacy" and that "[o]ur policy is to

11  protect the confidentiality of the individually identifiable information . . . and to

12  limit access to that information only to those with a need to know."[1]

13      3.      Defendant failed to meet its promises and its obligation to protect

14  personal information, including drivers' license information. Defendant readily

15  provided Plaintiff's and putative Class Members' driver's license numbers to *anyone*

16  who entered a person's name, address and/or date of birth into its on-line quoting

17  system. Thus, customers, prospective customers, and even members of the public

18  like Plaintiff, who was not even a prospective customer of Defendant, had this

19  sensitive personal information compromised.

20      4.      As reported by Defendant, between January 20, 2021, and February 12,

21  2021, "unknown malicious actors targeted the Farmers Auto quoting system to

22  obtain various individuals' personal information."[2]  Defendant stated that it is still

23  investigating "exactly how this occurred."  This means that for an unknown period

24  of time between at least January 20, 2021, and February 12, 2021, Plaintiff's and

25

26  _____

27  [1] https://www.farmers.com/privacy-statement/ (last visited June 10, 2021).

28  [2] https://oag.ca.gov/system/files/Breach%20notice%20CA-FFQ.pdf (last visited June
    14, 2021).

Class Members' driver's license numbers were essentially *publicly available* to anyone due to Defendant's lax security practices.

5.      As a corporation doing business in California, Defendant is legally required to protect personal information ("PI") from unauthorized access and exfiltration.

6.      As a result of Defendant's failure to provide reasonable and adequate data security, Plaintiff's and the Class Members' PI has been exposed to those who should not have access to it. Plaintiff and the Class are now at much higher risk of identity theft and for cybercrimes of all kinds, especially considering the highly valuable and sought-after PI stolen here.

## THE PARTIES

7.      Defendant Farmers Insurance Company, Inc., is a Kansas corporation with its principal place of business in Woodland Hills, California. Farmers is an insurance provider that provides insurance throughout the United States.

8.      Plaintiff Ronald Stallone is a resident of Hicksville, New York. In or about April 2021, he received notice from Defendant that it improperly exposed his driver's license number to an unknown third party. Plaintiff Stallone never sought a quote for insurance from Defendant.  In or about May 2021, Plaintiff Stallone received a letter stating that his application for credit at Eddie Bauer was not approved.  Plaintiff Stallone never applied for credit at Eddie Bauer.

## JURISDICTION AND VENUE

9.      Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members, at least one class member is a citizen of a state different from that of Defendant, and the amount in controversy exceeds $5 million, exclusive of interest and costs. The Court also has federal question jurisdiction under 28 U.S.C. § 1331 for the Drivers' Privacy Protection Act claims and supplemental jurisdiction over the state law claims

Class Action Complaint

pursuant to 28 U.S.C. § 1367.

10.    This Court has personal jurisdiction over Defendant because it maintains its principal place of business in this District, is registered to conduct business in California, and has sufficient minimum contacts with California.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and on information and belief, a substantial part of the events or omissions giving rise to Plaintiff's and Class Members' claims occurred in this District.

12.    Application of California law to this dispute is proper because Defendant's headquarters are in California, the decisions, actions, and/or circumstances that gave rise to the underlying facts at issue in this Complaint were presumably made or taken in California, and the action and/or inaction at issue emanated from California.

## FACTUAL ALLEGATIONS

### A.    Defendant collects PI and fails to provide adequate data security

13.    Defendant provides insurance and "is proud to serve more than 10 million households with more than 19 million individual policies across all 50 states."[3]

14.    Defendant offers a public-facing insurance quoting platform for visitors on its website. Visitors to its website can receive a quote for auto insurance after providing personal information.

15.    Defendant's quoting feature uses the information entered by the website's visitor and combines it with additional information it collects from consumer reporting agencies, including driving record and loss history reports, to provide the visitor a quote for car insurance and other information [including

---

[3] https://www.farmers.com/about-us/

Class Action Complaint

driver's license numbers].

16.    In and around January-February 2021, Defendant's instant insurance quote feature was used by unauthorized third-parties to obtain Plaintiff's and Class Members' drivers' license numbers using this system ("Unauthorized Data Disclosure").

17.    Plaintiff received a letter from Defendant entitled "Notice of Data Breach," dated April 22, 2021. The letter stated that Defendant "believe[s] malicious actors…obtain[ed] your driver's license number via the quoting system tool."[4]

18.    After receiving Data Disclosure notice letters, as a result of the substantial and imminent risk of future harm (including identity theft) to which Plaintiff and Class Members are now subject, it is important that they take steps to mitigate that substantial risk of future harm. In fact, in Farmers' letter it encourages affected individuals to use the identity theft protection service it offers to Plaintiff and the Class to help protect their identity from misuse and that they should, "[i]n addition to enrolling in Credit Monitoring…order your free credit report, place a fraud alert on your credit bureau file, place a security freeze on your credit file and report suspicious activity."

**B.    The PI exposed by Farmers as a result of its inadequate data security is highly valuable on the black market**

19.    The information exposed by Farmers is very valuable to phishers, hackers, identity thieves and cyber criminals, especially at this time where unprecedented numbers of fraudsters are filing fraudulent unemployment benefit claims.

20.    Cybercrime has been on the rise for the past decade and continues to

---

[4]https://oag.ca.gov/system/files/Breach%20notice%20CA-FFQ.pdf (last accessed on June 13, 2021)

Class Action Complaint

climb exponentially; as of 2013 it was being reported that nearly one out of four data breach notification recipients become a victim of identity fraud.[5]

21.    Stolen PI is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement has difficulty policing the dark web due to this encryption, which allows users and criminals to conceal identities and online activity.

22.    When malicious actors infiltrate companies and copy and exfiltrate the PI that those companies store, or have access to, that stolen information often ends up on the dark web because the malicious actors buy and sell that information for profit.[6]

23.    For example, when the U.S. Department of Justice announced its seizure of AlphaBay in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity. Other marketplaces, similar to the now-defunct AlphaBay, "are awash with [PI] belonging to victims from countries all over the world. One of the key challenges of protecting PI online is its pervasiveness. As data disclosures in the news continue to show, PI about employees, customers and the public is housed in all kinds of organizations, and the increasing digital transformation of today's businesses only broadens the number of potential sources for hackers to target."[7]

24.    The PI of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web

---

[5] Pascual, Al, "2013 Identity Fraud Report: Data Breaches Becoming a Treasure Trove for Fraudsters," *Javelin* (Feb. 20, 2013).

[6] *Shining a Light on the Dark Web with Identity Monitoring*, IdentityForce, Dec. 28, 2020, *available at:* https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring (last visited June 10, 2021).

[7] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, Armor, April 3, 2018, *available at:* https://www.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/ (last visited May 29, 2021).

Class Action Complaint

pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200[8]. Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web[9].

25.    The information compromised in the Unauthorized Data Disclosure is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Unauthorized Data Disclosure is difficult, and highly problematic, to change— driver's licenses and addresses.

26.    Recently, Forbes writer Lee Mathews reported on Geico's similar data disclosure wherein the hackers also targeted driver's license numbers, "Hackers harvest license numbers because they're a very valuable piece of information. A driver's license can be a critical part of a fraudulent, synthetic identity – which go for about $1200 on the Dark Web. On its own, a forged license can sell for around $200."[10]

27.    National credit reporting company, Experian, blogger Sue Poremba also emphasized the value of driver's license to thieves and cautioned:

If someone gets your driver's license number, it is also concerning

_____

[8] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*:
https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited May 29, 2021).
[9] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited May 29, 2021).
[10] Lee Mathews, *Hackers Stole Customers' License Numbers from Geico in Months-Long Breach*, (April 20, 2021), *available at*:
https://www.forbes.com/sites/leemathews/2021/04/20/hackers-stole-customers-license-numbers-from-geico-in-months-long-breach/?sh=3066c2218658 (last visited May 29, 2021).

Class Action Complaint

because it's connected to your vehicle registration and insurance policies, as well as records on file with the Department of Motor Vehicles, place of employment (that keep copy of your driver's license on file), doctor's office, government agencies, and other entities. Having access to that one number can provide an identity thief with several pieces of information they want to know about you. Next to your Social Security number, your driver's license is one of the most important pieces to keep safe from thieves.[11]

28.     In fact, according to CPO Magazine, which specializes in news, insights and resources for data protection, privacy and cyber security professionals, "[t]o those unfamiliar with the world of fraud, driver's license numbers might seem like a relatively harmless piece of information to lose if it happens in isolation. Tim Sadler, CEO of email security firm Tessian, points out why this is not the case and why these numbers are very much sought after by cyber criminals: "It's a gold mine for hackers. With a driver's license number, bad actors can manufacture fake IDs, slotting in the number for any form that requires ID verification, or use the information to craft curated social engineering phishing attacks. . . . bad actors may be using these driver's license numbers to fraudulently apply for unemployment benefits in someone else's name, a scam proving especially lucrative for hackers as unemployment numbers continue to soar. . . . In other cases, a scam using these driver's license numbers could look like an email that impersonates the DMV, requesting the person verify their driver's license number, car registration or insurance information, and then inserting a malicious link or attachment into the email."

29.     Drivers' license numbers have been taken from auto-insurance providers by hackers in other circumstances, indicating both that this particular form of PI is in

---

[11]  Sue Poremba, *What should I do If My Driver's License Number is Stolen?* (Oct. 24, 2018), *available at*: https://www.experian.com/blogs/ask-experian/what-should-i-do-if-my-drivers-license-number-is-stolen/ (last visited May 29, 2021).

Class Action Complaint

high demand and also that Farmers knew or had reason to know that its security
practices were of particular importance to safeguard consumer data.[12]

30.    Once PI is sold, it is often used to gain access to various areas of the
victim's digital life, including bank accounts, social media, credit card, and tax
details. This can lead to additional PI being harvested from the victim, as well as PI
from family, friends and colleagues of the original victim.

31.    According to the FBI's Internet Crime Complaint Center (IC3) 2019
Internet Crime Report, Internet-enabled crimes reached their highest number of
complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to
individuals and business victims.

32.    Further, according to the same report, "rapid reporting can help law
enforcement stop fraudulent transactions before a victim loses the money for good."
Defendant did not rapidly report to Plaintiff and Class Members that their PI had
been stolen. It took Farmers almost three months to do so.

33.    Victims of drivers' license number theft also often suffer unemployment
benefit fraud, harassment in person or online, and/or experience financial losses
resulting from fraudulently opened accounts or misuse of existing accounts.

34.    Unauthorized data disclosures facilitate identity theft as hackers obtain
consumers' PI and thereafter use it to siphon money from current accounts, open
new accounts in the names of their victims, or sell consumers' PI to others who do
the same.

---

[12] *See* United States Securities and Exchange Commission Form 8-K for INSU
Acquisition Corp. II (Feb. 1, 2021),
https://www.sec.gov/Archives/edgar/data/1819035/000121390021005784/ea134248-
8k_insuacquis2.htm?=1819035-01022021 (accessed Apr. 27, 2021) (announcing a
merger with auto-insurance company MetroMile, Inc., an auto-insurer, which
announced a drivers' license number Data Disclosure on January 19, 2021); Ron
Lieber, *How Identity Thieves Took My Wife for a Ride*, N.Y. TIMES (Apr. 27, 2021)
(describing a scam involving drivers' license numbers and Progressive Insurance).

Class Action Complaint

**C.     Farmers was on notice of the sensitive and private nature of the PI it utilized for insurance quotes and its duty to safeguard it**

35.     "Insurance companies are desirable targets for cyber attackers because they work with sensitive data."[13] In fact, according to the Verizon 2020 Data Breach Investigations Report there were 448 confirmed data breaches in the financial and insurance industries.[14]

36.     Farmers claims they "are committed to properly safeguarding consumer personal information and only using data in a manner that is necessary for servicing or better understanding our customers or potential customers.  Our policy is to protect the confidentiality of the personally identifiable information that you provide, and to limit access to that information only to those with a need to know."[15]

37.     Farmers' Privacy Policy also "note[s] that if state law is more protective of an individual's privacy than federal privacy law, we will protect information in accordance with state law while also meeting federal requirements."  Further, they state "[p]rotecting your privacy is important to us.  We maintain physical, electronic, and procedural safeguards that comply with applicable regulatory standards to guard your nonpublic personal information.  We do not disclose any nonpublic personal information about you except as described in this notice or as otherwise required or permitted by applicable law."[16]

38.     Farmers claims it "maintains physical, electronic, and procedural

---

[13] Data Protection Compliance for the Insurance Industry (October 7, 2020), *available at*: https://www.ekransystem.com/en/blog/data-protection-compliance-insurance-industry (last visited May 29, 2021).
[14] Verizon 2020 Data Breach Investigations Report (2020), available at: https://enterprise.verizon.com/content/verizonenterprise/us/en/index/resources/reports/2020-data-breach-investigations-report.pdf (last visited May 29, 2021).
[15] https://www.farmers.com/privacy-center/ (last visited June 10, 2021).
[16] https://www.farmers.com/content/dam/falcon/pdf/privacy-center/Farmers-Privacy-Notice.pdf (last visited June 13, 2021).

safeguards,"[17] however, those safety and security measures were insufficient. And while Farmers states that the information is protected by safeguards, it was not. The weakness in Farmers' system allowed access and ability to exfiltrate Plaintiff's and the Class Members' driver's license numbers.

**D.    Farmers failed to comply with Federal Trade Commission requirements**

39.    Federal and State governments have established security standards and issued recommendations to minimize unauthorized data disclosures and the resulting harm to individuals and financial institutions. The Federal Trade Commission ("FTC") has issued numerous guides for businesses that highlight the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[18]

40.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[19] Among other things, the guidelines note businesses should properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event

---

[17] https://www.farmers.com/content/dam/falcon/pdf/privacy-center/Farmers-Privacy-Notice.pdf (last visited June 10, 2021).

[18] *See* Federal Trade Commission, *Start With Security* (June 2015), available at: https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited May 29, 2021).

[19] *See* Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (Oct. 2016), available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited May 29, 2021).

of a breach.[20]

41.     Also, the FTC recommends that companies limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[21]

42.     Highlighting the importance of protecting against unauthorized data disclosures, the FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect PI, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.[22]

43.     Through negligence in securing Plaintiff's and Class Members' PI and allowing the thieves to utilize its instant quote website platform to obtain access and exfiltrate individuals' PI, Farmers failed to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and the Class Members' PI. Farmers' data security policies and practices constitute unfair acts or practices prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45, in addition to violation of the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. § 6801.

**E.     Plaintiff's attempts to secure their PI after the Unauthorized Data Disclosure**

***Plaintiff Stallone***

---

[20] *Id.*
[21] Federal Trade Commission, *Start With Security*, *supra* footnote 25.
[22] Federal Trade Commission, *Privacy and Security Enforcement Press Releases*, available at https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/privacy-security-enforcement (last visited Jan. 8, 2021).

12

44.     In or about April 2021, Plaintiff Stallone received a notice from Farmers dated April 22, 2021("Notice Letter"), informing him of the Unauthorized Data Disclosure and that his driver's license number may have been accessed.

45.     Following the Unauthorized Data Disclosure, Plaintiff Stallone received a letter dated May 25, 2021, denying his application for credit at Eddie Bauer. Plaintiff Stallone never applied for credit at Eddie Bauer.

46.     Following receipt of the Notice Letter and upon learning of the subsequent denial of Eddie Bauer credit, Plaintiff Stallone made reasonable efforts to mitigate further impact of the Unauthorized Data Disclosure, including reviewing and monitoring his accounts, and enrolling in the free credit monitoring offered and placing an alert on his credit bureau with Experian.

47.     Plaintiff Stallone researched his options to respond to the theft of his driver's license. He spent and continues to spend additional time reviewing his credit monitoring service results and reports from other online resources concerning the security of his identity and financial information. This is time Plaintiff Stallone otherwise would have spent performing other activities, such as his job and/or leisurely activities for the enjoyment of life.

48.      Plaintiff Stallone has never knowingly transmitted unencrypted PI over the internet or any other unsecured source. He deletes any and all electronic documents containing his PI and destroys any documents that contain any of his PI, or that may contain any information that could otherwise be used to compromise his PI.

49.     Plaintiff Stallone suffered actual injury from having his PI exposed as a result of the Unauthorized Data Disclosure including, but not limited to: (a) identity theft or fraud; (b) loss of his privacy and control over his use of his PI; and (c) imminent and impending further injury arising from the increased risk of fraud and identity theft.

50.     As a result of the Unauthorized Data Disclosure, Plaintiff Stallone was a

victim of identity theft, and will continue to be at heightened risk for financial fraud, future identity theft, other forms of fraud, and the attendant damages, for years to come.

**F.    Plaintiff and Class Members suffered damages**

51.    Plaintiff and Class Members are at risk for actual identity theft in addition to all other forms of fraud.

52.    The ramifications of Farmers' failure to keep individuals' PI secure are long lasting and severe. Once PI is stolen, fraudulent use of that information and damage to victims may continue for years.[23]

53.    The PI belonging to Plaintiff and Class Members is private, valuable and sensitive in nature as it can be used to commit a lot of different harms in the hands of the wrong people. Defendant failed to obtain Plaintiff's and Class Members' consent to disclose such PI to any other person as required by applicable law and industry standards.

54.    Farmers' inattention to the possibility that anyone, especially thieves, with various pieces of individuals' PI, could obtain any individual's PI by engaging with its front-facing instant quote platform left Plaintiff and Class Members with no ability to protect their sensitive and private information.

55.    Farmers had the resources necessary to prevent the Unauthorized Data Disclosure, but neglected to adequately implement data security measures, despite its obligations to protect PI of the Plaintiff and Class Members from unauthorized disclosure.

56.    Had Farmers remedied the deficiencies in its data security systems and adopted security measures recommended by experts in the field, it would have

---

[23] *2014 LexisNexis True Cost of Fraud Study*, (August 2014), *available at*: https://www.lexisnexis.com/risk/downloads/assets/true-cost-fraud-2014.pdf (last visited May 29, 2021).

Class Action Complaint

prevented the intrusions into its systems and, ultimately, the theft of PI.

57.    As a direct and proximate result of Farmers' actions and inactions, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort to mitigate the actual and potential impact of the Unauthorized Data Disclosure on their lives.

58.    The U.S. Department of Justice's Bureau of Justice Statistics found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems" and that "resolving the problems caused by identity theft [could] take more than a year for some victims."[24]

59.    As a result of Farmers' failures to prevent the Unauthorized Data Disclosure, Plaintiff and Class Members have suffered, will suffer, and are at increased risk of suffering:

a.    The compromise, publication, theft, and/or unauthorized use of their PI,

b.    Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud,

c.    Lost opportunity costs and lost wages associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Unauthorized Data Disclosure, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud,

---

[24] U.S. Department of Justice, Office of Justice Programs Bureau of Justice Statistics, *Victims of Identity Theft, 2012*, December 2013, *available at*: https://www.bjs.gov/content/pub/pdf/vit12.pdf (last visited May 29, 2021).

Class Action Complaint

d.  The continued risk to their PI, which remains accessible to Farmers and is subject to further breaches so long as Farmers fails to undertake appropriate measures to protect the PI and,

e.  Current and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, remediate, and repair the impact of the Unauthorized Data Disclosure for the remainder of the lives of Plaintiff and Class Members.

60.    In addition to a remedy for the economic harm, Plaintiff and the Class Members maintain an undeniable interest in ensuring that their PI is secure, remains private, and is not subject to further misappropriation and theft.

61.    To date, other than providing 12 months of credit monitoring and identity protection services, Farmers does not appear to be taking any measures to assist Plaintiff and Class Members other than simply telling them to do the following:

- Order your free credit report
- Place a fraud alert on your credit bureau file
- Place a security freeze on your credit file
- Report suspicious activity

None of these recommendations, however, require Farmers to expend any effort to protect Plaintiff's and Class Members' PI.  It is also not clear that Farmers has made any determination that the credit monitoring and identity protection services are designed or adequate to ameliorate the specific harms of having an exposed driver's license number.

62.    Farmers' failure to adequately protect Plaintiff's and Class Members' PI has resulted in Plaintiff and Class Members having to undertake these tasks, which require extensive amounts of time, calls, and, for many of the credit and fraud protection services, payment of money. Instead, as Farmers' notice indicates, it is putting the burden on Plaintiff and Class Members to discover possible fraudulent activity and identity theft.

63.     Farmers' offer of 12 months of identity monitoring and identity protection services to Plaintiff and Class Members is woefully inadequate. While some harm has begun already, the worst may be yet to come. There may be a time lag between when harm occurs versus when it is discovered, and also between when PI is acquired and when it is used.

**G.    Farmers' delay in identifying and reporting the Unauthorized Data Disclosure caused additional harm**

64.     The actual date Plaintiff and the Class Members' PI was improperly exposed is unknown to Plaintiff at this time.  However, Farmers discovered the Unauthorized Data Disclosure on or about February 12, 2021, and it was not until over two months later, in or about April 22, 2021, that Farmers began notifying those affected by the Unauthorized Data Disclosure, depriving them of the ability to promptly mitigate potential adverse consequences resulting from the Unauthorized Data Disclosure.

65.     As a result of Farmers' delay in detecting and notifying Plaintiff and Class Members of the Unauthorized Data Disclosure, the risk of fraud for Plaintiff and Class Members has been driven even higher.

## **CLASS ACTION ALLEGATIONS**

66.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the following proposed Nationwide Class (the "Class"), defined as follows:

> All persons in the United States whose PI was compromised in the Unauthorized Data Disclosure announced by Farmers on or near April 22, 2021.

67.     Excluded from the proposed Class are any officer or director of Defendant; any officer or director of any affiliate, parent, of Farmers; anyone employed by counsel in this action; and any judge to whom this case is assigned, his or her spouse, and Members of the judge's staff.

68.    **Numerosity.** Members of the proposed Class likely number in at least the tens of thousands and are thus too numerous to practically join in a single action. Membership in the Class is readily ascertainable from Defendant's own records.

69.    **Commonality and Predominance.** Common questions of law and fact exist as to all proposed Class Members and predominate over questions affecting only individual Class Members. These common questions include:

a.    Whether Defendant engaged in the wrongful conduct alleged herein,

b.    Whether Defendant's inadequate data security measures were a cause of the Unauthorized Data Disclosure,

c.    Whether Defendant owed a legal duty to Plaintiff and the other Class Members to exercise due care in collecting, storing, and safeguarding their PI,

d.    Whether Defendant negligently or recklessly breached legal duties owed to Plaintiff and the other Class Members to exercise due care in collecting, storing, and safeguarding their PI,

e.    Whether Defendant's online quote system auto-populated prospective quotes with PI obtained from the records of Defendant or third parties without the permission or consent of Plaintiff and the Class,

f.    Whether Plaintiff and the Class are at an increased risk for identity theft because of the Unauthorized Data Disclosure,

g.    Whether Defendant's conduct violated Cal. Bus. & Prof Code § 17200 *et seq*.,

h.    Whether Defendant failed to provide timely notice of the Unauthorized Data Disclosure to Plaintiff and Class Members in violation of California Civil Code § 1798.82,

i.    Whether Defendant violated the Drivers' Privacy Protection Act, 18 U.S.C. § 2724,

j.    Whether Plaintiff and the Class Members are entitled to actual, statutory, or other forms of damages, and other monetary relief, and

k.      Whether Plaintiff and the Class Members are entitled to equitable relief, including, but not limited to, injunctive relief and restitution.

70.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous questions that dominate this action.

71.    **Typicality:** Plaintiff's claims are typical of the claims of the Members of the Class. All Class Members were subject to the Unauthorized Data Disclosure and had their PI accessed by, used and/or disclosed to unauthorized third parties. Defendant's misconduct impacted all Class Members in the same manner.

72.    **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class Members he seeks to represent; he has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

73.    **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and the Class Members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendant, making it impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device

presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION

**Violation of the Drivers' Privacy Protection Act ("DPPA"), 18 U.S.C. § 2724**
**(On behalf of Plaintiff and the Nationwide Class)**

74.    Plaintiff incorporates the above allegations by reference.

75.    The DPPA provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains." 18 U.S.C. § 2724.

76.    Under the DPPA, a "'motor vehicle record' means any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles.'" 18 U.S.C. § 2725(a).  Drivers' license numbers are motor vehicle records under the DPPA.

77.    Defendant also obtains motor vehicle records directly from state agencies or through resellers who sell such records, and also from its customers.  During the time period up until and including at least February 12, 2021, PI, including drivers' license numbers, of Plaintiff and Class Members, were publicly available on Farmers' instant quote webpage and Farmers knowingly both used and disclosed Plaintiff's and members of the class's motor vehicle records for a purpose not permitted by the DPPA pursuant to 18 U.S.C. §§ 2724 and 2721(b).

78.    Plaintiff and putative Class Members are entitled to actual damages, liquidated damages, punitive damages, attorneys' fees and costs.

## SECOND CAUSE OF ACTION

**Negligence**

Class Action Complaint

**(On behalf of Plaintiff and the Nationwide Class)**

79.     Plaintiff incorporates the above allegations by reference.

80.     Defendant owed a duty to Plaintiff and the Class to exercise reasonable care in obtaining, securing, safeguarding, storing, and protecting Plaintiff's and Class Members' PI from being compromised, lost, stolen, and accessed by unauthorized persons. This duty includes, among other things, designing, implementing, maintaining, and testing its data security systems to ensure that Plaintiff's and Class Members' PI in Defendant's possession, or that could be accessed by Defendant, was adequately secured and protected.

81.     Defendant owed a duty of care to Plaintiff and Members of the Class to provide security, consistent with industry standards, to ensure that its systems and networks adequately protected PI it stored, maintained, and/or obtained.

82.     Defendant owed a duty of care to Plaintiff and Members of the Class because they were foreseeable and probable victims of any inadequate data security practices. Defendant knew or should have known of the inherent risks in having its systems auto-populate online quote requests with private PI and without the consent or authorization of the person whose PI was being provided.

83.     Unbeknownst to Plaintiffs and Members of the Class, they were entrusting Defendant with their PI when Defendant obtained their PI from other businesses. Defendant had an obligation to safeguard their information and was in a position to protect against the harm suffered by Plaintiff and Members of the Class as a result of the Unauthorized Data Disclosure.

84.     Defendant's own conduct also created a foreseeable risk of harm to Plaintiff and Class Members and their PI. Defendant's misconduct included failing to implement the systems, policies, and procedures necessary to prevent the Unauthorized Data Disclosure.

85.     Defendant knew, or should have known, of the risks inherent in

Class Action Complaint

collecting and storing PI and the importance of adequate security. Defendant knew about – or should have been aware of - numerous, well-publicized unauthorized data disclosures affecting businesses, especially insurance and financial businesses, in the United States.

86.     Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security to safeguard the PI of Plaintiff and Class Members.

87.     Because Defendant knew that a breach of its systems would damage thousands of individuals whose PI was inexplicably stored or was accessible, including Plaintiff and Class Members, Defendant had a duty to adequately protect its data systems and the PI contained and/or accessible therein.

88.     Defendant also had independent duties under state and federal laws that required Defendant to reasonably safeguard Plaintiff's and Class Members' PI.

89.     In engaging in the negligent acts and omissions as alleged herein, which permitted thieves to access Farmers' systems that stored and/or had access to Plaintiff and Class Members' PI, Defendant violated Section 5 of the FTC Act, which prohibits "unfair…practices in or affecting commerce" and the GLB Act. This includes failing to have adequate data security measures and failing to protect Plaintiff's and the Class Members' PI.

90.     Plaintiff and the Class Members are among the class of persons Section 5 of the FTC and GLB Acts were designed to protect, and the injuries suffered by Plaintiff and the Class Members are the types of injury Section 5 of the FTC Act and the GLB were intended to prevent.

91.     Neither Plaintiff nor the other Class Members contributed to the Unauthorized Data Disclosure as described in this Complaint.

92.     As a direct and proximate cause of Defendant's conduct, Plaintiff and Class Members have suffered and/or will suffer injury and damages, including but not limited to: (i) the loss of the opportunity to determine for themselves how their

PI is used; (ii) the publication and/or theft of their PI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PI; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Unauthorized Data Disclosure, including but not limited to efforts spent researching how to prevent, detect, contest and recover from tax fraud and identity theft; (v) costs associated with placing freezes on credit reports; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their PI, which remains in Defendant's possession (and/or Defendant has access to) and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PI in its continued possession; and, (viii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised PI.

### **THIRD CAUSE OF ACTION**

**Violation of the California's Unfair Competition Law**

**Cal. Bus. & Prof. Code § 17200, *et seq*.**

**(Brought by Plaintiff and the Nationwide Class)**

93.     Plaintiff incorporates the above allegations by reference.

94.     By reason of the conduct alleged herein, Defendant Farmers engaged in unlawful and unfair business practices within the meaning of California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200, *et seq*.

95.     Defendant stored and/or provided access to the PI of Plaintiff and all Class Members in its computer systems.

96.     Defendant knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with federal regulations and that would have kept Plaintiff's and all Class Members' PI secure

and prevented the loss or misuse of that PI.

**Unlawful Business Practices**

97.     Defendant violated the DPPA, Section 5(a) of the FTC Act, the GLB Act, and California Civil Code § 1798.81.5(b) by failing to implement and maintain reasonable and appropriate security measures or follow industry standards for data security, and by failing to timely notify Plaintiff and all Class Members of the Unauthorized Data Disclosure.

98.     If Defendant had complied with these legal requirements, Plaintiff and the Class Members would not have suffered the damages related to the Unauthorized Data Disclosure, and Defendant's notification of it.

99.     Plaintiff and all Class Members suffered injury in fact and lost money or property as the result of Defendant's unlawful business practices. In addition, Plaintiff and all Class Members' PI was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the hacked information is of tangible value. Plaintiff and all Class Members have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

**Unfair Business Practices**

100.    Defendant engaged in unfair business practices under the "balancing test." The harm caused by Defendant's actions and omissions, as described in detail above, greatly outweigh any perceived utility. Indeed, none of Defendant's actions or inactions can be said to have had any utility at all. Defendant's failures were clearly injurious to Plaintiff and all Class Members, directly causing the harms alleged below.

101.    Defendant also engaged in unfair business practices under the "tethering test." Defendant's actions and omissions, as described in detail above, violated fundamental public policies expressed by the California Legislature. See, e.g., Cal.

Class Action Complaint

Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the law.

102.    Defendant engaged in unfair business practices under the "FTC test." The harm caused by Defendant's actions and omissions, as described in detail above, is substantial in that it affects tens of thousands of Class Members and has caused those persons to suffer actual harms. Such harms include a substantial risk of identity theft, disclosure of Plaintiff's and all Class Members' PI to third parties without their consent, diminution in value of their PI, consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures. This harm continues given the fact that Plaintiff's and all Class Members' PI remains in Defendant's possession, without adequate protection, and is also in the hands of those who obtained it without their consent. Defendant's actions and omissions violated Section 5(a) of the Federal Trade Commission Act. See 15 U.S.C. § 45(n) (defining "unfair acts or practices" as those that "cause[ ] or [are] likely to cause substantial injury to consumers which [are] not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition"); see also, e.g., *In re LabMD, Inc.*, FTC Docket No. 9357, FTC File No. 102-3099 (July 28, 2016) (failure to employ reasonable and appropriate measures to secure personal information collected violated § 5(a) of FTC Act).

103.    Plaintiff and all Class Members suffered injury in fact and lost money or

property as the result of Defendant's unfair business practices. Plaintiff and all Class Members' PI was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the hacked information is of tangible value. Plaintiff and all Class Members have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

104.   As a result of Defendant's unlawful and unfair business practices in violation of the UCL, Plaintiff and all Class Members are entitled to equitable and injunctive relief, including restitution or disgorgement.

<strong><u>FORTH CAUSE OF ACTION</u></strong>
<strong>Declaratory and Injunctive Relief</strong>
<strong>(Brought by Plaintiff and the Nationwide Class)</strong>

105.   Plaintiff incorporates the above allegations by reference.

106.   This Count is brought under the federal Declaratory Judgement Act, 28 U.S.C. §2201.

107.   As previously alleged, Plaintiff and Class Members had a reasonable expectation that companies such as Defendant, who could access their PI through automated systems, would provide adequate security for that PI.

108.   Defendant owes a duty of care to Plaintiff and Class Members requiring it to adequately secure PI.

109.   Defendant still possesses PI regarding Plaintiff and Class Members.

110.   Since the Unauthorized Data Disclosure, Defendant has announced few if any changes to its data security infrastructure, processes, or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Unauthorized Data Disclosure to occur and, thereby, prevent further attacks.

111.   The Unauthorized Data Disclosure has caused actual harm because of Defendant's failure to fulfill its duties of care to provide security measures to

Plaintiffs and Class Members.  Further, Plaintiff and Class Members are at risk of additional or further harm due to the exposure of their PI and Defendant's failure to address the security failings that lead to such exposure.

112.   There is no reason to believe that Defendant's security measures are any more adequate now than they were before the Unauthorized Data Disclosure to meet Defendant's legal duties.

113.   Plaintiff, therefore, seeks a declaration (1) that Defendant's existing security measures do not comply with its duties of care to provide adequate security, and (2) that to comply with its duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to:

a.   Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors,

b.   Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring,

c.   Ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures,

d.   Ordering that Defendant not transmit PI via unencrypted email and not be permitted to put PI as part of its source code or otherwise be available on its instant quote webpage,

e.   Ordering that Defendant not store PI in email accounts or in any publicly facing website,

f.   Ordering that Defendant purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services,

g.  Ordering that Defendant conduct regular computer system scanning and security checks, and

h.  Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a disclosure when it occurs and what to do in response to a breach.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated, respectfully requests that the Court enter an order:

a.  Certifying the proposed Class as requested herein,

b.  Appointing Plaintiff as Class Representative and undersigned counsel as Class Counsel,

c.  Finding that Defendant engaged in the unlawful conduct as alleged herein,

d.  Granting injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

   i.   prohibiting Farmers from engaging in the wrongful and unlawful acts described herein,

   ii.  requiring Farmers to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws,

   iii. requiring Farmers to delete, destroy, and purge the personal information of Plaintiff and Class Members unless Farmers can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members,

   iv.  requiring Farmers to implement and maintain a comprehensive

Information Security Program designed to protect the confidentiality and integrity of the personal information of Plaintiff and Class Members' personal information,

v.    prohibiting Farmers from maintaining Plaintiff's and Class Members' personal information on a cloud-based database,

vi.   requiring Farmers to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Farmers' systems on a periodic basis, and ordering Farmers to promptly correct any problems or issues detected by such third-party security auditors,

vii.  requiring Farmers to engage independent third-party security auditors and internal personnel to run automated security monitoring,

viii. requiring Farmers to audit, test, and train its security personnel regarding any new or modified procedures,

ix.   requiring Farmers to conduct regular database scanning and security checks,

x.    requiring Farmers to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal information, as well as protecting the personal information of Plaintiff and Class Members,

xi.   requiring Farmers to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach,

xii.  requiring Farmers to implement a system of tests to assess its respective

employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Farmers' policies, programs, and systems for protecting personal information,

xiii.    requiring Farmers to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Farmers' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated,

xiv.    requiring Farmers to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal information to third parties, as well as the steps affected individuals must take to protect themselves,

xv.    requiring Farmers to design, maintain, and test its computer systems to ensure that PI in its possession is adequately secured and protected,

xvi.    requiring Farmers disclose any future data disclosures in a timely and accurate manner,

xvii.    requiring Defendant to implement multi-factor authentication requirements; and

xviii.    requiring Defendant to provide lifetime credit monitoring and identity theft repair services to Class Members.

e.  Awarding Plaintiff and Class Members damages,

f.  Awarding Plaintiff and Class Members pre-judgment and post-judgment interest on all amounts awarded,

g.  Awarding Plaintiff and the Class Members reasonable attorneys' fees, costs, and expenses; and

h.  Granting such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Class Action Complaint

Plaintiff, on behalf of himself and the proposed Class, hereby demand a trial by jury as to all matters so triable.

Dated: June 14, 2021          /s/ Gayle M. Blatt
                              GAYLE M. BLATT

                              **CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
                              David S. Casey, Jr.
                              *dcasey@cglaw.com*
                              Gayle M. Blatt
                              *gmb@cglaw.com*
                              P. Camille Guerra
                              *camille@cglaw.com*
                              110 Laurel Street
                              San Diego, CA 92101
                              Telephone: (619) 238-1811
                              Facsimile: (619) 544-9232

                              Kate M. Baxter-Kaur (MN #0392037)
                              Karen Hanson Riebel (MN #0219770)
                              **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
                              100 Washington Avenue South
                              Suite 2200
                              Minneapolis, MN 55401
                              Telephone: (612) 339-6900
                              Facsimile: (612) 339-0981
                              Kmbaxter-kauf@locklaw.com
                              khriebel@locklaw.com

                              *Attorneys for Plaintiff and the putative Class*

Class Action Complaint